## ST. LOUIS AND SAN FRANCISCO RAILWAY COMPANY *v.* SCHUMACHER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 239. Submitted February 1, 1894. — Decided March 5, 1894.

When the employé of a railroad company sues the company to recover damages for injuries inflicted upon him while in its service by reason of defective machinery, and it plainly appears that he was guilty of contributory negligence, and there is no evidence of a wilful or intentional negligence on the part of the railroad company for the purpose of injuring the plaintiff, there is nothing in the case to submit to the jury.

THIS was an action by Schumacher to recover for personal injuries received by him while in the employ of the defendant railway company as a laborer upon a gravel train, which was engaged in "surfacing" or ballasting defendant's tracks in the Indian Territory.

The complaint alleged that the plaintiff boarded the train at Tuscahoma, to aid in unloading the gravel when the car should reach its destination; that when the train reached Talihina, it was stopped on the main track to take on several cars loaded with gravel which were then on the side track; that after these cars were switched to the main track from the side track, they were cut loose from the engine and run with great force and violence down grade, until they struck the train on which plaintiff was riding; that the brakeman was unable to diminish the speed or check the cars, by reason of a defective brake, of the condition of which the defendant had notice, or might with proper diligence have had notice; and that by reason of the negligence of the defendant in permitting such defective brake to be used, plaintiff was, by the striking of the cars against the train on which he was riding, violently thrown from the car upon the track, the wheels running over his left foot and inflicting painful and serious injuries. In a supplemental complaint, plaintiff further charged the defendant with negligence in failing to make and enforce suitable regulations as to the manner of switching and making up trains, regulating the speed thereof, and providing a sufficient number of brakemen to check and control the cars.

The answer put in issue all these allegations, and pleaded contributory negligence on the part of the plaintiff.

Upon the trial the case was submitted to jury, who returned a verdict for the plaintiff in the sum of $8000, upon which judgment was entered, and defendant sued out this writ of error.

*Mr. George R. Peck, Mr. A. T. Britton, Mr. A. B. Browne,* and *Mr. E. D. Kenna* for plaintiff in error.

*Mr. A. H. Garland* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

We do not find it necessary to consider in detail the specification of errors assigned to the charge of the court in this case, as we are of opinion that, upon the conceded facts, there was such contributory negligence on the part of the plaintiff as required the court to direct a verdict for the defendant.

The testimony showed that plaintiff was employed as a common laborer by defendant; that it was his duty to assist in loading cars with gravel and then ride down on the train to that portion of the track where the gravel was to be used, and there to assist in unloading and placing the gravel between the ties. At the time of his injury, plaintiff was sitting on the end of a loaded flat car next to the caboose, with his feet hanging over the side of the car. The train had stopped at Talihina, a station between the gravel pit and its destination, to take up ten additional carloads of gravel, which were standing upon a side track, the original train consisting of four cars and a caboose. On arriving at Talihina, the engine left the cars and caboose on the main track, went in on the siding, coupled on thirteen cars that were standing on the side track, three of which next the engine were not wanted. When the engine and thirteen cars got on to the main track, the ten cars that were wanted were cut loose from the engine, and allowed to go down the grade. The grade proved to be a little steeper than the brakeman in charge of the cars supposed, and, to use his own words, "The cars got the start of me a little, and when I saw they were going to hit a little too hard, I halloaed to the men 'Look out!' I saw they were going to hit harder than I thought, harder than cars ought to strike in making a coupling." They came in contact with that portion of the train on which plaintiff sat with a violent jar or shock, which caused him to lose his balance, fall with his feet upon the track, when the wheels passed over a portion of his right foot, necessitating amputation.

The testimony showed that the train was manned by the usual complement of trainmen, namely, a conductor, two

brakemen, an engineer, and a fireman, and that each was competent. At the time of the injury, the conductor was near the forward end of the four stationary cars for the purpose of making the coupling. The engineer and fireman were in their proper positions upon the engine. One brakeman was with the engine and three cars, which were being replaced on the side track; and the other was on the ten cars which were to be attached to the train. There was no evidence of any defect in the brakes, machinery, or appliances, or any failure to make or enforce suitable regulations, and these issues were not submitted to the jury. There was evidence tending to show that the place where the plaintiff sat when he fell was a dangerous place to be in when cars were being coupled, and plaintiff testified that he knew that they were about to couple some cars, but was not watching and did not see the other cars come down. There was evidence tending to show that both the brakemen and the foreman shouted to the men on the flat cars to look out, and that they were distinctly heard by persons in a less favorable place to hear than the plaintiff. There was also evidence tending to show that the men had been warned by their foreman and by the train master not to ride on the flat cars, but to ride in the caboose, and that the conductor had told this same gang of laborers that morning that they had better ride in the caboose, and that there was plenty of room there. There was also testimony that the men often rode on flat cars with the knowledge of the foreman and conductor.

The gist of all this testimony is that, notwithstanding the foreman and the train master had warned the men not to ride on the flat cars, and had provided a caboose in which he was told it was safer to ride, plaintiff selected a place he knew to be dangerous, when cars were being coupled; sat with his legs hanging over the side of the car in a position in which he could be easily jostled off, and paid so little attention to what he knew was going on that he not only did not watch or see the other cars coming down, but failed to hear a warning shout heard by others in the vicinity, at least one of whom was more remote than he. Under such circumstances,

he has no right to call upon the company to pay him damages. Had he been riding in the caboose, he would have been safe. Had he taken the precaution to notice what was going on, he could not have failed to see that a collision was imminent, and could have jumped off. The only negligence chargeable against the defendant was in backing the train down at too great speed. But, giving to his own conduct as well as that of the defendant the construction most favorable to the plaintiff, there was no theory upon which it was proper to submit the case to the jury. There was no negligence by the defendant shown as occurring subsequent to the negligence of the plaintiff, since his negligence was continuous down to the moment of the injury. Neither was there any evidence of a wilful or intentional negligence on the part of the defendant for the purpose of injuring the plaintiff. None such was averred in the complaint, and none such was shown in the testimony. The case of *Railroad Co.* v. *Jones*, 95 U. S. 439, is directly in point, and is decisive of this. See also *St. Louis & San Francisco Railway* v. *Marker*, 41 Arkansas, 542; *Glover* v. *Scotten*, 82 Michigan, 369.

*The judgment of the court below must be reversed, and the cause remanded with directions to set aside the verdict and for further proceedings in conformity with this opinion.*