This is a suit for damages for personal injuries alleged to have been received by plaintiff when struck by one of defendant's trains in the city of Ruston, Lincoln Parish, Louisiana.
The burden of plaintiff's contention is that while in an intoxicated condition early on the morning of July 4, 1942, while sitting on the end of a crosstie on defendant's main line track, he was struck by the locomotive of a freight train and received severe, disabling and disfiguring injuries of a permanent nature. Plaintiff sued for damages in the total sum of $41,000, and was awarded judgment by the District Court in an amount of $7,500, from which judgment defendant prosecutes this appeal, which appeal has been answered on behalf of plaintiff with the prayer that the judgment appealed from be amended by increasing the amount awarded to the sum of $41,000.
We find the record establishes the fact that plaintiff, after a night devoted to steady drinking and some sporadic gambling in which another white man participated with plaintiff and some negroes in one of the negro quarters of Ruston, just before daylight on the morning of July 4, 1942, expressed the intention of going to his home, left his companions and undertook to follow a path up defendant's railroad between two tracks.
It appears that defendant's railroad operates on tracks running approximately north and south through the City of Ruston. At the point of the alleged accident there is a switch track paralleling the main line track on the east side thereof, and the space between the two tracks is used by pedestrians as a pathway in traveling from one section of the City to another, and particularly in going to and returning from the business district. At the site of the accident the railroad tracks are several feet higher than the adjoining property. On the east side of the railroad is located a tract known as Talbot quarters, inhabited by negroes, and on the other side of the railroad are found two other negro sections known as Smith and Kavanaugh quarters. There seems to be no question but that pedestrians traveling between these sections use a pathway leading up to the roadbed of the railroad near the Talbot quarters, then running between the main and switch tracks some distance south, and thence turning west to the Smith and Kavanaugh quarters. It is established that this fact is well known to the defendant company and its employees.
Plaintiff testified that from the time he left his companions until he recovered consciousness in the hospital he remembers practically nothing about his actions, with the single exception of the fact that he sat down on the end of a crosstie of the railroad track and finished drinking the liquor that remained in his bottle. His testimony that he was seated upon the crosstie is corroborated by the testimony of a negro girl about 20 years of age, Gertie Mae Lee, who saw plaintiff as she passed along the tracks early on the morning of July 4th. She fixes the time at about 5:15 A.M., and testified that about ten minutes later, when she had proceeded about 200 yards from the point at which she passed plaintiff, she heard a train pass, going south.
The testimony of several witnesses fixes the approximate time of the passage of the train through Ruston, and it is definitely established that the train was a scheduled through freight which passed the place of the accident at about the time of the alleged accident.
Brown's unconscious body was discovered about 6 o'clock on the morning of July 4th, an ambulance was called, and he was removed to the hospital.
It is earnestly contended on behalf of defendant that the actual occurrence of the accident has not been definitely established. While it is true that there is no testimony by any eye-witness of the accident, nevertheless, the circumstances surrounding the accident have been presented with such certainty and clarity that we cannot do otherwise than conclude that plaintiff suffered injuries when struck by a train of the defendant company at about the time and place set forth. To place any other interpretation upon the chain of circumstances presented would be to adopt a strained, speculative and hypothetical conclusion which is not justified by the facts, and which would certainly be a grave injustice to plaintiff.
In a clear and forceful written opinion, which analyzed the testimony of the several witnesses for both plaintiff and defendant, the trial Judge stated that he *Page 309 
was unable to reach any other logical conclusion, and with this statement we are in complete accord.
The only other question presented by this case involves plaintiff's condition, for under the jurisprudence of this State plaintiff can only recover if he was in such a helpless condition as not to be responsible or answerable for his actions. It is necessary for plaintiff to definitely establish the fact that the agents and employees of the defendant had the last clear chance to avoid the accident. We think this burden of proof has been fully discharged by plaintiff. There can be no serious question as to his intoxicated condition. Intoxication was nothing new to plaintiff and his own testimony shows that he had been jailed some twenty-five or thirty times on charges of intoxication. Both the testimony of plaintiff and that of other witnesses, who were with him a short time prior to the accident, definitely establishes the fact that he was in an advanced stage of intoxication at the time he left his companions and headed in the direction of the railroad track. The testimony of the negro girl, above referred to, further establishes the fact that while seated on the crosstie of the track plaintiff was asleep.
It is true that both the engineer and fireman of defendant's train testified positively that they did not see plaintiff on or near the track, and that they could, and would, have seen him had he, in fact, been there at the time and place alleged. We do not feel it is necessary to comment in detail upon this testimony, since we are definitely of the opinion that plaintiff was on the track where he could and should have been seen by the engineer or fireman, or both, if they had been keeping a proper lookout at the time.
The last clear chance to avoid the accident lay with the crew of the train, and the failure of defendant's engineer to avoid the accident renders it liable in damages. Jones v. Chicago, R.I. P. Railway Co., 162 La. 690, 111 So. 62; Russo v. Texas P. Railway Co., 189 La. 1042, 181 So. 485; Jackson v. Cook,189 La. 860, 181 So. 195; Young v. Thompson, La.App., 189 So. 487.
Plaintiff had been without sleep during the entire night immediately preceding the accident; he was in an intoxicated condition, and at the time of the accident he was in a drunken stupor or asleep. Under these conditions, even the evident negligence of plaintiff does not preclude his recovery of damages against a defendant charged with the responsibility of the last clear chance of avoiding the accident.
As to the character and extent of plaintiff's injuries, there can be no real doubt plaintiff suffered several lacerations of the scalp, a skull fracture, paralysis of the left side of the face, and groups of muscles in the right shoulder, and the fracture of several ribs on the right side. At the time of the trial, more than three months after the date of the accident, plaintiff was unable to raise his arm above shoulder level, and at the time plaintiff further suffered permanent impairment of the hearing in his left ear.
The evidence establishes the fact that plaintiff suffered no permanent injury from the fractures, and indicates that the paralysis would lessen over a period of years, likely to such extent as to permit plaintiff to resume his occupation as a painter. At the time of the accident plaintiff testified he was earning $40.50 per week as a painter.
After full consideration of the nature and character of plaintiff's injuries and the effect thereof, the trial Judge fixed the amount of damages in the sum of $7,500. In our opinion the amount awarded is neither excessive nor inadequate, and, accordingly, we find no error in the figure at which the trial Judge arrived.
For the reasons assigned, the judgment appealed from is affirmed at defendant's cost. *Page 310